UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TWYILLA M.,[1] | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Case No.: 1:17-cv-00264-RLY-DML ) |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) ) |
|     Defendant. | ) ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REMAND under sentence six the decision of the Deputy Commissioner for Operations of the Social Security Administration ("Commissioner") that plaintiff Twyilla M. is not disabled.

---

[1] To protect privacy interests of claimants for Social Security benefits and consistent with a recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name in this Report and Recommendation.

## Introduction

Plaintiff Twyilla M. applied in September 2013 for Disability Insurance Benefits and Supplemental Security Income based on disability under Titles II and XVI, respectively, of the Social Security Act, alleging she has been disabled since June 9, 2013. Acting for the Commissioner of the Social Security Administration following a hearing on May 21, 2015, administrative law judge Shirley Moscow Michaelson issued a decision on July 30, 2015, that Twyilla is not disabled. The Appeals Council denied review of the ALJ's decision on December 23, 2016, rendering the ALJ's decision for the Commissioner final. Twyilla timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Twyilla argues that the Commissioner's decision should be remanded under sentence four of Section 405(g) on the ground that the ALJ did not properly develop the record and should have ordered her to undergo a neurological examination. She also argues that this case is suitable for a remand under sentence six of Section 405(g), and the court should require the Agency to evaluate an EEG[2] Twyilla underwent in August 2015 and a VNG[3] that she underwent in September 2015.

---

[2]   EEG stands for electroencephalogram. It measures electrical activity in the brain.

[3]   VNG stands for videonystagmography. It tests the inner ear and portions of the brain. Eye movement is assessed and the inner ear is stimulated for response. The test assists in determining causes of balance or dizziness problems. *See* *https://www.neurologycenter.com/services/videonystagmography-vng*.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Twyilla's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Twyilla is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of

Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and RFC; if so, then she is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

### Analysis

**I. The ALJ's Sequential Findings**

Twyilla was born in 1961, was 52 years old as of her alleged disability onset date in June 2013, and was 54 years old at the time of the ALJ's decision. Twyilla was a nurse's aide for about 30 years, and her job was physically demanding. She traces her disability onset date in June 2013 to "feeling her back pop" while trying to lift a patient. She developed severe back pain that was treated with pain

5

medication, physical therapy, and injections. Ultimately, surgery was required and on August 30, 2013, Twyilla underwent a laminectomy (surgery that removes one or more vertebrae), medial facetectomy and foraminotomy[4] at L3-4 and L4-5, and a posterior fusion at L4-5 in August 2013.

At step one, the ALJ found Twyilla had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ identified the following as severe impairments: degenerative disc disease of the lumbar spine; history of asthma; Factor V Leiden hypercoagulability[5]; and obesity. At step three, and based on the hearing testimony of a medical expert, the ALJ determined that no listing-level impairment was established by the record.

The ALJ next determined Twyilla's residual functional capacity (RFC) for purposes of conducting the required analysis at steps four and five. She restricted Twyilla to light work as defined at 20 C.F.R. § 404.1567(b), imposed certain postural restrictions (only occasional balancing, stooping, kneeling, crouching, crawling, climbing ramps/stairs), and forbade climbing ladders, ropes, and scaffolds. She also imposed some environmental restrictions. (R. 27).

The ALJ found Twyilla cannot perform her past relevant work, which was performed at the medium or greater level of exertion. The ALJ then concluded,

---

[4]  A facetectomy is a surgical procedure to remove spine growths that affect a nerve in the spine. A foraminotomy is a surgical procedure to widen openings where nerve roots exit the spinal canal.

[5]  Factor V Leiden is the name of a genetic mutation. It results in a person's tendency to form abnormal blood clots. *See* https://ghr.nlm.nih.gov/condition/factor-v-leiden-thrombophilia.

based on the testimony of a vocational expert, that the postural and environmental restrictions in the RFC do not significantly erode the occupational base for unskilled light jobs. The ALJ then relied on the grids, specifically Medical-Vocational Rule 202.14, and found that Twyilla is not disabled.

## II. Twyilla's Assertions of Error

Twyilla does not contend that any of the ALJ's analysis is without evidentiary support, but that the administrative record is not sufficiently complete to have allowed for a reasoned decision about her disability. Alternatively, she contends that a sentence six remand is appropriate because of new evidence. The court first addresses Twyilla's argument that a remand under sentence four is required based on the ALJ's alleged failure to ensure a complete record. It will then address the sentence six issue.

### A. The Sufficiency of the Record

Based on a comment by the medical expert during the hearing, Twyilla contends that the ALJ should have ordered additional testing before deciding disability. In response to a statement by the ALJ that it did not appear that Twyilla's doctors had done much to investigate Twyilla's complaints about falling, except from suspecting a bacterial infection that was cleared up and medication dosage problems that were adjusted, the medical expert stated: "And I think that with the falling, I would think that at this point she should have had an MRI and should have had maybe a neurologic examination." (R. 68).

Twyilla argues that this statement is an opinion by the medical expert that Twyilla should undergo a neurologic examination. She contends that the ALJ should have thus ordered Twyilla to undergo that exam and it was error that she did not augment the record with an exam before deciding whether Twyilla was disabled. Notably, Twyilla does not suggest that the ALJ should have ordered an MRI.

An ALJ has discretion to decide if the record is sufficiently complete to make a disability determination. All possibilities do not have to be exhausted, and the court must respect the agency's judgment about how much evidence is enough. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). *See also Poyck v. Astrue,* 414 Fed. App'x 859, 861 (7th Cir. 2011) ("This court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish this goal."); *Nicholson v. Astrue,* 341 Fed. App'x 248, 254 (7th Cir. 2009) ("[T]he question before us is whether the ALJ's decision to rest on the record that he had was an abuse of discretion.")

The court cannot find that the ALJ abused her discretion here. The medical expert's comment about a neurological examination was framed in terms of what Twyilla's doctors should perhaps have found appropriate—something *maybe* she should have undergone. There is no suggestion within the comment or anywhere else in the doctor's testimony that Twyilla's functional abilities cannot reasonably be assessed without additional diagnostic testing. Moreover, Twyilla was

8

represented at the hearing by the same lawyer who represents her on this appeal of the Commissioner's decision, and he never suggested at the hearing that the ALJ should order additional testing or that the record was in any way incomplete. When a claimant is represented by counsel at the hearing, the ALJ "is entitled to assume" the claimant "is making his strongest case for benefits." *Nicholson,* 341 Fed. App'x at 253 (citing *Glenn v. Sec'y of Health and Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)). Under all of these circumstances, the court finds no error based on the ALJ's decision that the administrative record was complete. A sentence four remand based on Twyilla's argument that additional testing was required is not warranted.

### B. Sentence Six Remand

Twyilla submitted with her briefing to this court the results of two diagnostic tests. The first is an EEG conducted on August 14, 2015, about two weeks after the ALJ issued her decision. *See* Dkt. 18-1 at p. 3. The test was conducted "secondary to complaints of memory loss, myoclonic jerking [a spasm], episodic paresthesia [burning or prickling sensation], and balance and confusion." *Id.* The test was read as "abnormal" and "characterized by bitemporal left greater than right slowing with admixed sharp transients, which may indicate a predisposition to seizure activity and possible structural versus functional abnormalities in these regions." *Id.* The second is a VNG test, and Twyilla had reported that she has vertigo feelings when lying down, turning over, and moving her head too fast. Dkt. 18-1 at p. 2. This test showed some abnormal findings, including "abnormal tracking," some dizziness,

and some right and left beating nystagmus (a vision condition in which the eyes make repetitive, uncontrolled movements, which can affect balance and coordination). *See https://www.aoa.org/patients-and-public/eye-and-vision-problems/glossary-of-eye-and-vision-conditions/nystagmus.*

Twyilla had submitted these (and some other records) to the Appeals Council, but the Appeals Council—pointedly—did not include them as part of the administrative record. *See* R. 5 (the Appeals Council's list of its Exhibits, which does not include these records). Instead, the Appeals Council stated that because the testing is dated after the ALJ's July 30, 2015 decision, "the new information is about a later time" and Twyilla can submit the information in connection with a new disability claim if she chooses. (R. 2).

Under sentence six of 42 U.S.C. § 405(g), a court may remand for the consideration of evidence if the evidence is "new," "material," and there is good cause for the failure to have incorporated the evidence into the record at the administrative hearing. *See* 42 U.S.C. § 405(g) (sentence six); *Diaz v. Chater,* 55 F.3d 300, 305 n.1 (7th Cir. 1995) (citing *Eads v. Sec'y of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir. 1993)).

The Commissioner does not contest that the evidence is new as it pertains to the administrative record before the ALJ, but challenges whether it can be considered material and whether there was good cause. She also makes a threshold argument that the evidence is not eligible at all for consideration under sentence six because it was "considered" by the Appeals Council. For the latter argument, she

cites an unpublished Seventh Circuit decision in *DeGrazio v. Colvin,* 558 Fed. App'x 649, 652 (7th Cir. 2014), in which the court noted that evidence already submitted to the Appeals Council and considered by it is no longer "new" for purposes of a sentence six remand. But this record shows that the Appeals Council *did not* designate the new tests as part of the administrative record. The court is therefore persuaded by Twyilla's argument (*see* Dkt. 24 at pp. 7-9) that because of their absence from the administrative record both before the ALJ and before the Appeals Council, she is not prevented from arguing that the evidence can be evaluated under the criteria for a sentence six remand.

      The court finds that Twyilla has met her burden to show that the evidence is "new" and that there is good cause why it was not included in the record before the ALJ. Evidence is "new" for purposes of sentence six if it was not available before the ALJ issued her decision. *Sample v. Shalala,* 999 F.2d 1138, 1144 (7th Cir. 1993). Because the testing was performed two weeks (the EEG) and about two months (the VNG) after the ALJ issued her decision, it is new. Twyilla had good cause for not submitting the testing because it was unavailable to her before the ALJ issued her decision, and there is no indication that Twyilla had control over the time frames under which the testing was ordered by her doctors and conducted. Indeed, she stated at the hearing that her doctors had mentioned the possibility of neurological testing and "[t]hey were going to set me up for an appointment." (R. 49). Under these circumstances, the court finds good cause.

The more thorny issue is whether the testing is "material." Materiality requires that the evidence relate back to the time period that the ALJ adjudicated, *Kapusta v. Sullivan,* 900 F.2d 94, 97 (7th Cir. 1989), and that there is a "reasonable probability" that the evidence would have changed the ALJ's decision. *Johnson v. Apfel,* 191 F.3d 770, 776 (7th Cir. 1999). The court agrees with Twyilla that both facets of the materiality test are met. The testing was performed within only two weeks and two months after the end of the period under adjudication (July 30, 2015), and there is no indication that any event occurred between July 30 and the dates of the testing to suggest that the tests are relevant only to some new condition that appeared or changed after July 30, 2015. In short, there is no basis for believing that the tests do not concern impairments and their severity as they existed on or before July 30. As to whether there is a reasonable probability that the evidence would change the ALJ's decision, Twyilla argues that the evidence would affect the ALJ's decision that she can engage in prolonged periods of standing and/or walking for a total of six hours every workday. If she is restricted to sedentary work, then based on her age and the lack of transferable skills, she would "grid" as disabled. Moreover, if her RFC is even a more modified level of light work, it may erode the occupational base to a level inconsistent with the ALJ deciding disability based on the grids—the basis for the ALJ's decision here.

The court finds that there is a reasonable probability that the ALJ could determine that Twyilla is not capable of the full range of light work, with its prolonged walking and standing requirements, if she considers the new tests.

These tests may fill the very gap in medical evidence that the ALJ stressed at the hearing—evidence to explain why Twyilla has been so susceptible to falling. The ALJ noted that she was "real troubled by the falls" and "concerned that this falling hasn't been pursued." (R. 68). This evidence may provide the ALJ with an answer and cause her to find that there is a neurological basis for Twyilla's falls, which may limit her to less than a full range of light work or to sedentary work.

For all of these reasons, the court finds that Twyilla has met her burden to show that a sentence six remand is appropriate.

## Conclusion

For the foregoing reasons, the Magistrate Judge reports and recommends that the District Judge REMAND the Commissioner's decision under sentence six of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: August 21, 2018

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana